**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ANTHONY KAPINSKI,

      Plaintiff,

    v.                                 Civ. No. 18-716 SCY/GJF

CITY OF ALBUQUERQUE and
TERRA JUAREZ,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Anthony Kapinski shot and killed two people during a late-night altercation in a church parking lot. Two of the church's surveillance cameras recorded the entire incident. The lead detective investigating the case, Defendant Terra Juarez, viewed the surveillance footage but swore out an affidavit in support of an arrest warrant that only described eyewitness accounts and did not mention the videos. Defendant Juarez later testified before the grand jury, which issued a true bill charging Plaintiff with both murders. At trial, Plaintiff presented a self-defense argument and a jury acquitted him. Plaintiff then filed the current lawsuit under 42 U.S.C. § 1983 against Defendant Juarez alleging that, in violation of his Fourth Amendment rights, she failed to provide information that led to his false arrest and imprisonment (Count I) and malicious prosecution (Count II). In addition, Plaintiff asserts a claim against Defendant City of Albuquerque under the New Mexico Tort Claims act for failure to properly train and supervise Defendant Juarez (Count III). All of Plaintiff's claims are premised on his argument that the videos demonstrate that he acted in self-defense and, had Defendant Juarez accurately conveyed the information on these videos, the lack of probable cause would have been evident and Plaintiff

never would have been arrested or charged.

Defendant Juarez moves for qualified immunity on the basis that no reasonable officer would have known that she had to include the information about self-defense Plaintiff claims she deliberately and recklessly omitted from her search warrant affidavit and grand jury testimony. Doc. 17. Defendant City of Albuquerque also moves for summary judgment on the state tort claim against it. *Id.* Because probable cause existed to support at least one of the murder charges and because, even if it did not, Plaintiff has failed to cite clearly established law that would have put Defendant Juarez on notice that her alleged omissions were unlawful, qualified immunity shields her from civil liability. Therefore, the Court grants summary judgment on the federal claims. The Court also declines supplemental jurisdiction over the state claim.

## I.     BACKGROUND

### A.     Procedural Background

Plaintiff filed suit on July 26, 2018. Doc. 1. On August 25, 2018, he filed a First Amended Complaint ("FAC"). Doc. 5. The FAC brings causes of action under § 1983 against Defendants City of Albuquerque and Terra Juarez for False Arrest and Imprisonment (Count I) and Malicious Prosecution (Count II). FAC ¶¶ 36-45. It also brings a claim against the City of Albuquerque under the New Mexico Tort Claims Act ("NMTCA") for negligent training and supervision (Count III). FAC ¶¶ 46-52. Defendants filed their Answer on September 10, 2018. Doc. 6.

At the Rule 16 scheduling conference, Plaintiff clarified that the federal claims are brought solely against Defendant Juarez, not against both Defendants collectively. Doc. 14 at 1 (Clerk's minutes).[1] After the conference, the Magistrate Judge entered a scheduling order

---

[1] Clerk's minutes do not constitute a court order or a stipulation by the parties. Even if the FAC were to be read to assert § 1983 claims against the City, however, Plaintiff has not set forth

requiring Defendants to file a dispositive motion in the next thirty days. Doc. 15. On November 28, 2018, Defendants filed the instant Motion For Summary Judgment On Qualified Immunity And Other Grounds. Doc. 17. While the parties were briefing that motion, they stipulated to a stay of discovery. Docs. 19, 20.

The motion is fully briefed and ready for decision. Docs. 17, 21, 25, 26. Under 28 U.S.C. § 636(c), all parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 8, 9, 10.

B.    Factual Background

Under Federal Rule of Civil Procedure 56(a) and Local Rule 56.1, a movant seeking summary judgment must "set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." The party opposing summary judgment must "contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." D.N.M.LR-Civ. 56.1(b). "Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* Most importantly, "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted" in this fashion. *Id.* Plaintiff disputes only Defendants' fact 21, which alleges that the "videos from the surveillance cameras mirror Ms. Molt's statement set forth in the arrest warrant affidavit." Doc. 17 at 6. Otherwise, Plaintiff does not specifically controvert any of Defendants' facts. Rather, Plaintiff argues that all of Defendants' facts are immaterial and

---

sufficient factual matter to support such a claim. In order to prevail on a claim against the City for a constitutional violation, Plaintiff must satisfy the test articulated in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Plaintiff has set forth no undisputed facts showing the existence of a custom or policy of the City that caused the alleged violation, sufficient to support a *Monell* claim.

offers his own additional material facts. Doc. 21 at 5. Because Plaintiff has not disputed Defendants' facts with reference to the record, the Court deems all but Defendants' fact 21 as undisputed.

      1.    <u>Defendant's Statement Of Undisputed Facts</u>

On Saturday, June 2, 2017, at approximately 11:12 p.m., Albuquerque Police Department ("APD") Officer Emmett Fritz was on patrol when he heard multiple gunshots in the parking lot of the New Beginnings Church located at 3601 Montgomery Blvd NE in Albuquerque, New Mexico. Doc. 17 at 3 ¶ 1. Officer Fritz observed a green Honda Civic leave the parking lot at high speed. *Id.* ¶ 2. He tried to follow the green Honda, but lost sight of it. *Id.* ¶ 3. He returned to the parking lot and saw two young men on the ground who had been shot. *Id.* ¶ 4. One, Jordan Mucher, was already deceased from a gunshot wound to the head, and the other, Paul Francia, had a weak pulse and died shortly after the officer began administering aid. *Id.* ¶¶ 5-6. APD Detective Terra Juarez arrived at the scene to investigate the shooting. *Id.* ¶ 7. She conducted and recorded interviews of the eyewitnesses to the shooting. *Id.* ¶ 8.

    Eyewitness Manuel Castro reported:

> he heard what sounded like a vehicle backfire; looked in the direction of the sound; noticed a male pointing a gun at another male; saw the male with the gun shoot twice; and then saw the male with the gun flee in a green Honda hatchback.

*Id.* ¶ 9. Eye witness Tyler Schwebke reported:

> he arrived at the parking lot with victims Jordan Mucher and Paul Francia; all three were upset with Plaintiff because he had stolen vehicle parts from them in the past; and Mr. Schwebke did not see the shooting but saw Plaintiff leave in a red Honda Civic. Mr. Schwebke also stated that he had known Plaintiff for years and identified him from a photograph provided by detectives.

*Id.* ¶ 10 (citations omitted). Eyewitness Mariah Molt reported:

> she had been dating Paul Francia for about three months; heard Paul Francia mention that he wanted to talk to Plaintiff; saw Paul Francia and another male talking with Plaintiff on the driver's side of a green Honda Civic; heard Paul

Francia say to Plaintiff "you know who the fuck I am"; saw Paul Francia punch Plaintiff; saw Plaintiff fall into the driver's seat of the car; saw the other male that was present begin fighting with Paul Francia; saw Jordan Mucher get involved in the fight; heard gunshots and muzzle flashes coming from the car Plaintiff was in; saw Paul Francia fall over grabbing his chest; and saw Plaintiff leave in a green Honda Civic.

*Id.* ¶ 11 (alteration omitted).

Sometime between 3:00 a.m. and 3:57 a.m. on June 3, Defendant Juarez obtained and viewed the surveillance video footage of the parking lot from the church. *Id.* ¶ 12. She discovered that Plaintiff owned a 1991 green Honda Civic, and viewed his Facebook page, which had, as the profile picture, a photo of a green Honda Civic. *Id.* ¶¶ 14-15. Defendant Juarez submitted an arrest warrant for Plaintiff charging one count of homicide, and later amended it to two counts. *Id.* ¶ 16, 18. Assistant District Attorney D. Roberson approved the warrant, and Judge Nan Nash signed it. *Id.* The affidavits in support of the warrant described Defendant Juarez' interviews with the three eyewitnesses and the substance of their stories. Doc. 17-3 at 2-3. It did not mention any surveillance videos. *See generally id.*

Police took Plaintiff into custody that same day. *Id.* ¶ 17. Two weeks later, on June 16, 2017, Defendant Juarez testified before a grand jury on a two count indictment charging Plaintiff with two open counts of murder. *Id.* ¶ 22. She discussed the surveillance videos in depth. *Id.* ¶ 23. The grand jury true billed both counts of first degree murder. *Id.* ¶ 24.

2.    The Surveillance Videos

The two surveillance videos—one which depicts the events from a camera perched on the rooftop (Exhibit D to Defendant's Motion), and the other which depicts the events from the front door of the church (Exhibit E to Defendant's Motion)—have been submitted to the Court along with Defendants' motion for summary judgment. *See* Doc. 18. When no party disputes the authenticity of a video and the video is so clear that no reasonable jury could adopt the

nonmoving party's interpretation of the video, the Supreme Court has instructed that lower courts should "view[] the facts in the light depicted by the videotape" rather than accepting the nonmoving party's interpretation of the facts. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

The rooftop surveillance video depicts a church parking lot after dark. In the center left of the video, a small dark car[2] is parked at an angle, partially taking up a striped area reserved for a handicapped spot. A man in a light shirt (who Defendant Juarez identifies as Aiden, Doc. 17-4 at 11) exits a car parked two spaces away and walks over to the small dark car. The driver of the small dark car, a man in a dark shirt (who the parties agree is Plaintiff), gets out of the car. The two men talk for a while, as cars continue to exit the parking lot. Plaintiff and Aiden are soon approached by three other men, one wearing a light shirt and two wearing dark shirts. Defendant Juarez identifies the man in a light shirt as Paul Francia, one of the men in a dark shirt as Jordan Mucher, and the third man as Travis (Doc. 17-4 at 10-13). Other people also approach but stand several feet away from the parked car as they watch what appears to start out as a conversation between Paul and Plaintiff. During this time, Aiden stands just to the side of Paul while Jordan and Travis stand a few feet behind Aiden. The crucial events are the few seconds that then pass from the time Paul punches Plaintiff until the time Plaintiff shoots Paul and Jordan and then drives away. The door surveillance video depicts the same events, but from a different angle. Because the rooftop video is consistent with the door video, the Court sets forth the crucial events with time reference only to the door video.

---

[2] Plaintiff's car is described as "green," but the color of the car is not ascertainable from the video because it is in black and white.

| Door Video | Event Depicted |
|---|---|
| 2:05 | - Paul punches Plaintiff in the face for no apparent reason and continues to throw several punches. |
| 2:06 | - Plaintiff sinks back into the driver's seat of the car out of view of the camera.<br>- Aiden moves toward Paul. |
| 2:07 | - Aiden begins punching Paul from behind Paul's back.<br>- Jordan jumps on Aiden's back and pulls him away from Paul. Both Jordan and Paul end up a few feet from the driver's side door of the car. |
| 2:09 | - Something light in color emerges from the driver side door (consistent with Plaintiff's assertion that this was Plaintiff's shoe).<br>- Paul turns and backs away from the car. (It is not clear that Paul has been shot at this point). |
| 2:10 | - Several people watching the altercation begin to run away.<br>- Jordan and Aiden continue to fight a few feet away from the driver's side door of the car. |
| 2:11 | - Plaintiff stands up with his arms extended (the video is not clear enough to tell whether Plaintiff is carrying a gun, but his posture is consistent with a person pointing a gun).<br>- Paul hunches over and begins to stumble backwards.<br>- Plaintiff's hands come down. |
| 2:12 | - Plaintiff's hands come back up.<br>- Plaintiff goes back into the car and cannot be seen from the video. |
| 2:13 | - There is a flash near the driver's side door of the car.<br>- Jordan falls to the ground and Aiden backs away.<br>- Plaintiff then stands up again. |
| 2:14 | - Plaintiff gets back into the car. Except for Jordan, who is lying in the street, no one else is in the immediate vicinity of the car.<br>- The headlights of the car come on. |
| 2:15 | - Paul begins to fall to the ground.<br>- A bright flash comes from the inside of the car. |
| 2:19 | - Plaintiff drives away. |

The facts in the above table are clearly depicted in the videos and so not subject to interpretation. In contrast, Plaintiff submits additional facts not clearly depicted on the videos and that constitute an interpretation of the videos most favorable to Plaintiff. The Court addresses Plaintiff's additional facts in Section III.B.1 of this Opinion.

## II.    LEGAL STANDARD

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When an individual defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The plaintiff must show that 1) the officer violated a constitutional or statutory right and 2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). A court may address these prongs in either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both to avoid qualified immunity, *Olsen*, 312 F.3d at 1304.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action at issue need not have been previously declared unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Unlawfulness is generally demonstrated "when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law." *Id.* at 1069-70 (internal quotation marks omitted). "A prior case need not have identical facts," *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017), but the precedent must make it clear "to every reasonable officer . . . that what he is doing violates that right," *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by defendants was found to have acted unlawfully. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018).

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "The Court has

found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citations omitted). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted). Thus, qualified immunity provides "ample room for mistaken judgments" and protects all but "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 314, 343 (1986).

## III. DISCUSSION

### A. The Defense Of Qualified Immunity Is For A Court To Resolve, Not A Jury.

Defendant Juarez argues that qualified immunity shields her from Plaintiff's claims and, on that basis, moves for summary judgment on all claims against her. Plaintiff responds that a material issue of fact exists regarding whether "Juarez **recklessly omitted material information from the affidavit that would have vitiated probable cause if it had been included**" and that "[t]he questions of whether the video evidence shows what Plaintiff contends it does and whether that information would have altered the magistrate's determination are then **jury questions**." Doc. 21 at 1, 13 (emphasis in original). In short, Plaintiff argues that a jury, not a judge, should determine the outcome of his lawsuit.

Plaintiff fails to recognize, however, that he must clear the two hurdles qualified immunity places in his path before he can get to a jury trial. To clear the first hurdle, Plaintiff must show that, drawing all factual inferences in his favor, a reasonable jury could find that Defendant Juarez violated his Fourth Amendment rights. This requires more than proving that probable cause did not exist to support Plaintiff's arrest. Police officers do not incur civil liability for every mistaken judgement. To clear this first hurdle, Plaintiff must prove not only that

probable cause did not exist, but also that Defendant Juarez deliberately or recklessly failed to include critical information in her arrest warrant affidavit that would have vitiated probable cause. Assuming Plaintiff could clear this first hurdle, Plaintiff would also then need to demonstrate that legal precedent provided clear notice to all reasonable police officers that it would be unlawful to omit whatever evidence of self-defense Plaintiff contends should have been included in the affidavit. Here, as explained below, the relevant question is not whether any reasonable factfinder viewing the videos find an absence of probable cause. Instead, the relevant question at the second prong is simply whether "arguable probable cause" existed. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). Put another way, Defendant Juarez is entitled to qualified immunity if her "conclusions rest[ed] on an objectively reasonable, even if mistaken, belief that probable cause exist[ed]." *Id.*

Plaintiff cites to three cases in support of his argument that "whether omissions from a warrant affidavit are material is a question for the jury unless the Plaintiff fails to raise any evidence sufficient to create a genuine issue of fact on the issue." Doc. 21 at 7. First, in *DeLoach v. Bevers*, the Tenth Circuit, upon finding "evidence from which the jury could conclude that [the officer] made intentional or reckless misstatements in her arrest affidavit", denied the defendants' motion for a judgment notwithstanding the verdict (a motion in which the defendants asserted qualified immunity). 922 F.2d 618, 619, 621 (10th Cir. 1990). In doing so, the Tenth Circuit stated, "[w]e have long held that it is a jury question in a civil rights suit whether an officer had probable cause to arrest." *Id.* at 622-23 (10th Cir. 1990). In *DeLoach*, however, evidence existed that the defendant officer deliberately chose to omit material information from an arrest warrant affidavit in retaliation for plaintiff's decision to hire a lawyer instead of cooperating. *Id.* at 620. In fact, one of the officer's colleagues testified that the officer stated,

"[p]ayback is hell, that's what she got for hiring a smart-ass lawyer". *Id*. The officer also admitted saying "payback is hell" in reference to plaintiff's failure to "cooperate." *Id*. Thus, *DeLoach* involved the deliberate omission of medical evidence "material enough" to constitute a jury question (testimony from a doctor indicating that the decedent had pre-existing injuries). *Id*. at 622-23. In contrast, as set forth below, even if Defendant Juarez did deliberately omit information from her affidavit, the materiality of that information is far from clear.

Moreover, it is significant that the analysis in *DeLoach* occurred *after* the case had already gone to trial and the jury rendered a verdict in favor of Plaintiff. As a result, the district court did not have the opportunity before trial to address qualified immunity, an analysis that necessarily would have included consideration of the probable cause issue. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Immunity ordinarily should be decided by the court long before trial."). Pursuant to published Tenth Circuit precedent, when a defendant raises qualified immunity pre-trial, as Defendant Juarez has done, district courts should consider the issue of probable cause as part of the qualified immunity analysis. *See Puller v. Baca*, 781 F.3d 1190 (10th Cir. 2015) (concluding at the pre-trial qualified immunity stage that, after taking out false information and adding in material omitted information in the affidavit at issue, probable cause still existed to support an arrest warrant and so summary judgment in favor of the defendant was appropriate); *see also White*, 137 S. Ct. at 551 (district courts have a duty to permit cases to go to trial only when the right at issue has already been clearly established at a high degree of specificity); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation: because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability.'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))).

Plaintiff's remaining two citations do not indicate otherwise. The plaintiffs in *Harte v. Board of Commissioners of County of Johnson, Kansas* alleged, among other things, that the defendant officers lied when they swore, in an affidavit for a search warrant, that leaves found in the plaintiffs' trash tested positive for marijuana. *Harte*, 864 F.3d 1154, 1174 (10th Cir. 2017). In a decision that consisted of three separate opinions, none of which are controlling, the Tenth Circuit found that this claim survived the defendants' assertion of qualified immunity. *See id.* at 1158 (per curiam). Judge Phillips would have affirmed the district court's decision to grant the defendants' motion for summary judgment and concluded that plaintiff cleared neither the first nor second prong of the qualified immunity test. *Id*. at 1175 ("to infer from the [plaintiffs'] evidence that the deputies lied would require an unreasonable inference based on little more than speculation" and "[e]ven if I concluded that the deputies' search-warrant affidavit didn't provide probable cause and violated the Fourth Amendment, I still couldn't conclude that the deputies violated clearly established law."). In contrast, Judge Lucero determined that summary judgment was inappropriate because the evidence "creates a triable issue of fact on whether [the defendant officers] lied about having conducted the field tests, or about having obtained 'positive' results." *Id*. at 1162.

Judge Moritz then broke the tie. She determined that every reasonable officer is on notice that a constitutional violation would arise from deliberately and falsely swearing in a search warrant application that leaves tested positive for marijuana when, in fact, they did not. *Id*. at 1999. Because Judge Moritz determined that evidence supported this allegation, she found summary judgment on this claim to be inappropriate. She found summary judgment to be inappropriate, however, where the plaintiffs claimed that the defendant officers acted with *reckless disregard* for the truth in misinterpreting the negative test results as positive and in

stating that the leaves at issue were marijuana leaves when they were in fact tea leaves. *Id.* at 1202. The different result, Judge Moritz concluded, derives from the different levels of notice provided to police officers. While every reasonable officer should know (and it is beyond debate) that an officer cannot deliberately include a material lie in an affidavit to establish probable cause, legal terms like "reckless" are ambiguous and fail to "inform reasonable officers what type of conduct is prohibited." *Id.* When guidance given to an officer is ambiguous, a plaintiff must "identify a case where an officer acting under similar circumstances as [the deputies] was held to have violated the Fourth Amendment." *Id.* (quoting *White*, 137 S. Ct. at 552).

The Court finds Judge Moritz's reasoning persuasive and consistent with Supreme Court authority. In the present case, even assuming Defendant Juarez had a duty to include evidence of self-defense in her arrest warrant affidavit, it is not clear how much detail is required. A broad legal standard (that an officer may not knowingly or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause) does not sufficiently apprise an officer about how much self-defense information an officer must provide in an affidavit, assuming an officer is obligated to provide self-defense information at all. Contrary to Plaintiff's argument, Judge Lucero's opinion in *Harte* does not clearly establish that the facts Plaintiff alleges, if true, would constitute a constitutional violation. Judge Lucero's opinion is not controlling and fails to provide facts sufficiently analogous to the present case to put Defendant Juarez on notice that the conduct alleged would violate Plaintiff's constitutional rights.

Plaintiff's third citation is to *Panaderia La Diana, Inc. v. Salt Lake City Corp.*, 342 F. Supp. 2d 1013 (D. Utah 2004), *aff'd on other grounds*, 455 F.3d 1155 (10th Cir. 2006). He claims *Panaderia La Diana* "den[ied] qualified immunity to officers" and quotes it for the

proposition that a genuine issue of fact as to the materiality of false statements in an affidavit is sufficient to send the question to the jury. Doc. 21 at 8. In reality, the district court *granted* qualified immunity to all individual defendants because the plaintiffs did not specifically identify which defendant engaged in what unlawful conduct. 342 F. Supp. 2d at 1031-35. In addition, *Panaderia La Diana* found that there was no genuine issue of fact as to whether the allegedly false statements in the search warrant affidavit were material. *Id.* at 1039-40. In contrast to Plaintiff's argument, *Panaderia La Diana* treats the materiality of an omitted statement as a question for the court, not a jury. *Id.* at 1039 ("The court finds, however, that any allegedly false statements were not material to the issuance of the warrant.").

Plaintiff's view appears to be that if, once material information omitted from an arrest warrant affidavit is included, reasonable minds could disagree about whether probable cause exists, the matter must go to a jury. This is incorrect: such a rule would fail to "give[] government officials breathing room to make reasonable but mistaken judgments . . . ." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). In other words, Plaintiff's construction would effectively deprive public officials of the benefits of qualified immunity. The Supreme Court said as much when it criticized the Ninth Circuit for taking an approach similar to the one Plaintiff advocates:

> The Court of Appeals' confusion is evident from its statement that "[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment ... based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach." 903 F.2d, at 721. This statement of law is wrong for two reasons. First, it routinely places the question of immunity in the hands of the jury. *Immunity ordinarily should be decided by the court long before trial*. See *Mitchell, supra,* 472 U.S., at 527-529. Second, the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact.

*Hunter*, 502 U.S. at 227-28 (emphasis added). Consistent with this Supreme Court precedent, the Court now engages in the required qualified immunity analysis.

B.  Defendant Juarez Is Entitled To Qualified Immunity.

1.  Defendant Juarez' Affidavit, Even As Modified, Contained Probable Cause For Plaintiff's Arrest.

In addressing the first prong of the qualified immunity analysis, the Court draws guidance from *Puller v. Baca*, 781 F.3d 1190 (10th Cir. 2015). There, in an affidavit for an arrest warrant, the defendant officer swore that a witness told him that the plaintiff, along with several others, "took part in the initial attack on the victim." *Id.* at 1194-95. The officer failed to mention, however, that this same witness could not identify plaintiff by name. *Id.* at 1195. Nor did the officer mention that a separate witness claimed that plaintiff would not have been involved in the fight because his "grandma would kill him." *Id.* The state district court judge who presided over the plaintiff's ensuing criminal prosecution dismissed the charges against plaintiff after concluding that, when considering the statement of the witness who said that plaintiff would not have been involved, probable cause to support the arrest warrant was lacking. *Id.* The plaintiff then filed a civil lawsuit in federal court, claiming false arrest, malicious prosecution, and manufacture of inculpatory evidence. *Id.*

On appeal of the district court's decision to grant summary judgment, the Tenth Circuit noted that the district court set aside what it considered false information in the affidavit and included what it considered to be omitted material information. *Id.* at 1196. Likewise, the Tenth Circuit then went on to "measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Id.* at 1197. After engaging in this analysis (rather than having a jury do it), the Tenth Circuit stated, "[w]e agree with the district court that Detective Baca's affidavit (even as modified) gave probable cause that [plaintiff] had committed a bias-motivated crime . . . ." *Id.* at 1198. Notably, neither the district court nor the

Tenth Circuit found probable cause to support the more serious charge of aggravated assault. *Id.* Thus, if an affidavit contains two bases to arrest a person and only one is later found to hold water, no constitutional violation exists—one justification is enough. Based on *Pullman* then, Defendant Juarez would be entitled to summary judgment if, considering the video evidence not presented, probable cause exists to support either charged murder. *Id.* at 1200 ("we conclude that the modified affidavit provided sufficient information to establish probable cause for [plaintiff's] arrest. Because even the modified affidavit establishes probable cause, [plaintiff] cannot establish a constitutional violation on his false arrest, malicious prosecution, and substantive due process claims.").

Plaintiff argues that he was acting in self-defense, but at least with respect to Jordan, he fails to grapple with the fact that this really presents a "defense of others" scenario. According to Plaintiff, he shot Jordan both because Jordan was attacking Plaintiff by shoving the car door into him, *and* because Jordan had his companion in a chokehold. Doc. 21 at 4. Because Jordan is wearing a dark shirt against the dark pavement, the videos neither show nor definitively rule out whether, while fighting Aiden (Plaintiff's companion), Jordan shoved the car door into Plaintiff. Nor do the videos confirm or rule out that Jordan is choking Aiden when Plaintiff shoots Aiden. The videos do clearly show that Jordan grabs Aiden from behind, that the two thereafter continue to fight until Plaintiff shoots Aiden, and that, just before Plaintiff shoots Jordan, Jordan has his arm around Aiden's head in some sort of a headlock. However, during the approximately six seconds that they fight, both Jordan and Aiden are active; in other words, the video definitively does not show Jordan choking a passive and defenseless Aiden. In addition, the videos show that Jordan and Aiden are engaged in hand-to-hand combat (and Plaintiff makes no allegation that Jordan had any kind of weapon). When the last flash comes from Plaintiff's car (at 2:15 into the

door video), however, Jordan is already on the ground and no one else is near Plaintiff. In sum, the videos both provide Plaintiff a viable defense-of-others claim *and* provide law enforcement probable cause to charge Plaintiff with the murder of Jordan.

"Probable cause is not a precise quantum of evidence—it does not, for example, require the suspect's guilt to be more likely true than false. Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotations omitted). Although, drawing all reasonable inferences in favor of Plaintiff, it is possible that Jordan was choking Aiden at the time Plaintiff shot Jordan, the Court does not agree with Plaintiff that it is indisputably clear that Aiden was in "immediate danger of death or great bodily harm." NMRA, CR UJI 14-517. Further, the videos show that, at the time Plaintiff shot Jordan, Plaintiff had already shot Paul and all others in the vicinity were moving away, rather than toward, Plaintiff. In short, the videos show that Plaintiff shot a person while that person was engaged in a fist fight with another. Further, the videos provide evidence (although not conclusive evidence) that Plaintiff again shot Jordan while Jordan was lying on the ground with no one else in close proximity. That the circumstances in which Plaintiff found himself give rise to a viable (and ultimately successful) defense does not mean that probable cause did not exist to support the charges against him. Given the low threshold for establishing probable cause, the Court concludes that, at a minimum, the videos provide probable cause to justify the arrest of Plaintiff for the murder of Jordan. As a result, Plaintiff cannot clear the first prong of the qualified immunity analysis.

2.     The Law Is Not Clearly Established.

        a.     A Reasonable Officer Could Have Thought the Affidavit Was
               Supported By Probable Cause.

At step two of the qualified immunity test, the focus is on the reasonable officer, not on

what a reasonable judge might have concluded or on what a jury could conclude. As the Tenth

Circuit recently stated:

> In the context of a qualified immunity defense on an unlawful search or arrest
> claim, we ascertain whether a defendant violated clearly established law "by
> asking whether there was 'arguable probable cause'" for the challenged conduct.
> *Kaufman,* 697 F.3d at 1300. Arguable probable cause is another way of saying
> that the officers' conclusions rest on an objectively reasonable, even if mistaken,
> belief that probable cause exists. *Cortez v. McCauley,* 478 F.3d 1108, 1120 (10th
> Cir. 2007). A defendant "is entitled to qualified immunity if a reasonable officer
> could have believed that probable cause existed to arrest or detain the plaintiff."

*Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). Although qualified immunity does

not "protect officers who misrepresent or omit material facts to the magistrate judge . . . the

burden is on the plaintiff to 'make a substantial showing of deliberate falsehood or reckless

disregard for truth' by the officer seeking the warrant." *Id.* at 1142 (quoting *Snell v. Tunnell*, 920

F.2d 673, 698 (10th Cir. 1990)). "This test is an objective one: when there is no dispute over the

material facts, a court may determine as a matter of law whether a reasonable officer would have

found probable cause under the circumstances." *Id.* "To establish reckless disregard in the

presentation of information to a magistrate judge," the exculpatory value of evidence must be

"apparent." *Id.* (citing *Moldowan v. City of Warren*, 578 F.3d 351, 388 (6th Cir. 2009)).

"'[O]missions are made with reckless disregard if an officer withholds a fact in his ken that any

reasonable person would have known that this was the kind of thing the judge would wish to

know' and . . . assertions are in reckless disregard of the truth if they are made 'with a high

degree of awareness of the statements' probable falsity.'" *Id.* (quoting *Wilson v. Russo*, 212 F.3d

781, 787-88 (3d Cir. 2000)).

In *Stonecipher*, the Tenth Circuit makes clear that, at the second prong of the qualified immunity analysis, courts must ask whether the officer's affidavit rested on "arguable probable cause"—an objectively reasonable, even if mistaken, belief that probable cause exists. When the evidence at issue comes from authentic videos, a court must determine what evidence the videos clearly depict. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). The Court completed this task through creation of the table set forth above, in section I.B.2. In addition to what is clearly depicted on the videos, Plaintiff offers "additional facts" that consist of an interpretation of the videos that most favors his position. In *Scott*, however, the Supreme Court instructs that courts engaged in a qualified immunity analysis should not simply defer to a non-moving party's self-serving description of the videos at issue. 550 U.S. at 380-81.[3] This makes sense, as considerations usually at play in factual determinations, such as the credibility of witnesses, do not come into play in reviewing videos. Further, deferring to Plaintiff's self-serving interpretation of the videos would not allow the Court to complete the task *Stonecipher* requires—considering whether an officer could have an objectively reasonable, even if mistaken, belief that the videos, along with other evidence in the case, provided probable cause to justify Plaintiff's arrest. For the same reasons the Court found that probable cause existed to support Plaintiff's arrest, the Court finds that Defendant Juarez had arguable probable cause to arrest Plaintiff.

        b.       <u>The Law Does Not Clearly Establish That An Affidavit Of Probable Cause Must Include Any Evidence Of Self-Defense.</u>

This conclusion that the second prong of the qualified immunity analysis shields Defendant Juarez from civil liability garners further support from a review of the few cases that

---

[3] Defendants dispute Plaintiff's additional facts. The facts Defendants proffered that the Court accepted, in contrast, are facts Plaintiff did not dispute.

have addressed whether a police officer in New Mexico must present evidence of self-defense during preliminary criminal proceedings.

Plaintiff argues that, in New Mexico, a law enforcement officer who submits an affidavit in support of an arrest warrant on state murder charges must set forth probable cause that the homicide was not the product of self-defense. Further, because "an officer must not recklessly omit material information," Plaintiff argues, the act of recklessly omitting material information about self-defense establishes a constitutional violation. Doc. 21 at 13. Plaintiff's argument does have logical appeal. No one disputes that, rather than treating self-defense simply as an affirmative defense, New Mexico considers the absence of self-defense an element the State must prove beyond a reasonable doubt to sustain a murder conviction. *State v. Benally*, 131 N.M. 258, 34 P.3d 1134, 1136 (2001). Further, to support a criminal charge, probable cause must exist as to *each element* of the charge. *State v. Gallegos*, 2009-NMSC-017, ¶ 18 ("[I]t is the State's burden to prove the elements contained in the special verdict form in order to obtain a conviction for first-degree, rather than second-degree, kidnapping. Therefore, it is not unreasonable to expect the State to establish probable cause for the same elements at the grand jury stage."). Thus, Plaintiff reasons, an agent who obtains an arrest warrant through the deliberate omission of material information about self-defense violates a criminal defendant's constitutional rights.

Regardless of the logical appeal of this argument, however, New Mexico and Tenth Circuit case law indicates that a law enforcement officer in New Mexico has no constitutional duty to present evidence of self-defense at the preliminary stages of a criminal proceeding. In *State v. Augustin M.*, a three-judge panel of the New Mexico Court of Appeals unanimously recognized *Benally* but nonetheless concluded that "the rule requiring instruction to the grand jury on the essential elements of the crimes does not apply to defenses." 133 N.M. 636, 639, 68

P.3d 182, 185 (Ct. App. 2003). In considering whether a state grand jury should have been instructed on the justification of self-defense, the Court of Appeals stated, "[w]e see no basis on which to require the State to instruct the grand jury on defenses a defendant may raise in a criminal trial to acquit based on justification . . . ." *Id*. at 642, 68 P.3d at 188.

The Tenth Circuit then later cited *Augustin M*. in concluding "that [the plaintiff] has failed to show that it was clearly established in 2009 that the defendants violated his constitutional rights by arresting him after he admitted killing a man, even though he claimed he shot the man in self-defense." *Sanchez v. Labate*, 564 F. App'x 371, 373 (10th Cir. 2014). All three judges found that the plaintiff "failed to cite a single Supreme Court or Tenth Circuit decision holding that law-enforcement officers must resolve a claim of self-defense before arresting someone who has admitted killing another person." *Id.* Further, *Sanchez* also involved a killing in New Mexico and so the Tenth Circuit had occasion to consider the same argument Plaintiff now makes. In rejecting that argument, the Tenth Circuit first "recognize[d] that the New Mexico Supreme Court has held that the State bears the burden to prove the unlawfulness of a killing when a criminal defendant raises a claim of self-defense at trial." *Id.* (citing *State v. Benally*, 131 N.M. 258, 34 P.3d 1134, 1136 (2001); and *State v. Parish,* 118 N.M. 39, 878 P.2d 988, 992 (1994)). Nonetheless, the Tenth Circuit concluded: "[T]his burden on the State does not arise in pretrial proceedings. As the New Mexico Court of Appeals has held, a grand jury need not be instructed on a target's claim of self-defense before the grand jury determines whether there is probable cause to charge the target with a crime." *Id.* (citing *Augustin M.*, 133 N.M. 636, 68 P.3d at 188-89). "Thus, New Mexico law, rather than supporting [the plaintiff], actually suggests that the officers had no duty to consider a claim of self-defense in deciding whether they had probable cause to arrest him." *Id.*

Although unpublished, *Augustin M.* is persuasive. Further, Plaintiff cites no case decided since 2009 (when *Sanchez* surveyed the clearly established law) and before June 3, 2017 (when Defendant Juarez swore out her affidavit in support of the arrest warrant) that views New Mexico law differently. Plaintiff merely cites law clearly establishing that a police officer may not omit evidence knowingly or with reckless disregard for the truth. Doc. 21 at 5-8, 11. None of these cases address whether a claim of self-defense is material evidence that must not be omitted from an affidavit. This is not enough. *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (it is a "well-settled rule that the *plaintiff* bears the burden of citing to us what he thinks constitutes clearly established law") (internal quotation marks and alterations omitted; emphasis in original).

In short, the only six judges known to have addressed whether evidence of the absence of self-defense must be presented during preliminary criminal proceedings in New Mexico have determined that it does not. To rule in Plaintiff's favor, the Court would have to conclude that law enforcement officers in New Mexico were somehow on clear notice that the law in New Mexico was the opposite of what all judges considering the issue said it was. Thus, regardless of any logical appeal to Plaintiff's argument about what the law should be, it is clear that preexisting cases fail to clearly establish that a law enforcement officer in New Mexico violates a criminal defendant's constitutional rights when that officer fails to present evidence of self-defense during the preliminary stages of a murder prosecution.

The only case Plaintiff cites that supports his position that self-defense vitiates probable cause is an unpublished district court case out of Pennsylvania that is being appealed[4] and

---

[4] *Tereo v. Smuck*, No. 18-3311 (3d Cir. filed Oct. 18, 2018).

conflicts with at least one other case from the same circuit.[5] *See* Doc. 21 at 8-9 (citing *Tereo v. Smuck*, No. 1:16-CV-1436, 2017 WL 2080193 (M.D. Pa. May 15, 2017)). Even if this case were published, district court decisions do not clearly establish the law for purposes of qualified immunity. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (district courts do not make precedent, and many courts of appeals therefore decline to consider district court decisions when determining if constitutional rights are clearly established for the purposes of defeating qualified immunity); *see also Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) ("In order for a law to be clearly established, there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other *circuits* must have found the law to be as the plaintiff maintains." (internal quotation marks omitted) (emphasis added)).

In the Tenth Circuit, it is not clearly established that self-defense needs to be included in affidavits of probable cause, and so police officers have not been placed on notice that they must include such information in affidavits submitted in support of arrest warrants.

          c.         <u>No Law Clearly Dictates How Much Information On Self-Defense Defendant Juarez Needed To Include, If Any.</u>

Even if it were clearly established in New Mexico that police officers are obligated to present evidence of self-defense at preliminary criminal proceedings, no case defines the contours of what or how much information a police officer must present. Qualified immunity strikes a balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties by making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson v.*

---

[5] The Eastern District of Pennsylvania has expressly disagreed that Third Circuit precedent requires affidavits of probable cause to set forth affirmative defenses such as self-defense. *Gorman v. Bail*, 947 F. Supp. 2d 509, 522-23 (E.D. Pa. 2013).

*Creighton*, 483 U.S. 635, 639-40 (1987) (internal quotation marks omitted). In the present case, it is undisputed that Defendant Juarez provided at least some description of the facts relevant to self-defense in both her arrest warrant affidavit, and her grand jury testimony. Doc. 17-1 at 2-3; Doc. 17-3 at 2-3; Doc. 17-4 at 12-18. Thus, Plaintiff's argument is not that Defendant Juarez failed to present evidence of self-defense. Instead, it is that Defendant Juarez failed to present all the evidence of self-defense Plaintiff believes Defendant Juarez should have presented.

The touchstone inquiry when considering the second prong of the qualified immunity analysis is whether a state actor had clear notice that his or her actions were illegal. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The more ambiguous the situation, the more essential it is that controlling authority with similar facts exists to clearly define the contours of the right at issue and specify what conduct is out of bounds. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) ("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."). A police officer called to the scene of two homicides in the middle of the night and tasked with gathering all relevant evidence, sorting through what to include in an arrest warrant affidavit, and drafting that affidavit the same night will invariably omit information later presented during a multiple-day trial in the matter. If a public officer is to be held civilly liable for information left out of her affidavit, she must first receive clear notice of what information is constitutionally required to be included.

Plaintiff's recitation of an officer's duty not to deliberately or recklessly include false information in an affidavit, or omit material information from an affidavit, does not provide the clear notice qualified immunity requires. The Supreme Court's recent decision in *Mullenix v. Luna*, 136 S. Ct. 305 (2015), is illustrative of this point. There, the Supreme Court rejected

decisions by a district court judge and the Fifth Circuit that a jury should resolve the question of whether a police officer used excessive force when he shot and killed a man who was fleeing from officers who were attempting to execute an arrest warrant. *Id.* at 306-07. The Fifth Circuit "agreed with the District Court that the 'immediacy of the risk posed by Leija is a disputed fact that a reasonable jury could find either in the plaintiffs' favor or in the officer's favor, precluding us from concluding that Mullenix acted objectively reasonably as a matter of law.'" *Id.* at 307 (quoting *Luna v. Mullenix*, 765 F.3d 531, 538 (2014)). After considering whether to provide *en banc* review, the Fifth Circuit issued a revised opinion in which it "recognized that objective reasonableness is a question of law that can be resolved on summary judgment . . . ." *Id.* at 308. Nonetheless, the Fifth Circuit denied the defendant officer qualified immunity because "'the law was clearly established such that a reasonable officer would have known that the use of deadly force, absent a sufficiently substantial and immediate threat, violated the Fourth Amendment.'" *Id.* (quoting from the Fifth Circuit revised opinion, *Luna v. Mullenix*, 773 F.3d 712, 725 (2014)).

In rejecting the Fifth Circuit's revised opinion, the Supreme Court began its analysis by reiterating that public officials do not face civil liability unless they violate an established statutory or constitutional right—meaning a right so clear that every reasonable official would have understood that what he is doing violates that right. *Id.* The Court then reiterated that clearly established law must not be defined at a high level of generality. *Id.* Moreover, "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). In *Mullenix*, the defendant officer "confronted a reportedly intoxicated fugitive, set on avoiding capture through high-speed

vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer [where the shooting occurred]." *Id*. at 309. In considering whether qualified immunity shielded the officer from civil liability, the Supreme Court stated, "[t]he relevant inquiry is whether existing precedent placed the conclusion that Mullenix acted unreasonably in these circumstances beyond debate." *Id*. (internal quotation marks omitted).

Thus, in deciding whether the law was clearly established, the Supreme Court declined to find that the general standard for determining excessive force placed the defendant officer on clear notice that the conduct he engaged in was unlawful. Similarly, except for egregious circumstances in which every reasonable officer would understand the conduct at issue to be unreasonable, the general rule set forth in *Franks*[6] does not provide notice to officers of how detailed their arrest warrant affidavits must be. In determining whether an officer is entitled to qualified immunity, the relevant question is not whether the officer made a mistake or whether, in retrospect, the officer should have acted differently. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Instead, the relevant inquiry is whether an officer had clear notice that the specific conduct in which the officer engaged was illegal.

Defendant Juarez' affidavit informed Judge Nash that: (1) "Paul punched Anthony"; (2) "Anthony fell back into the driver's seat then the unknown male began to fight with Paul" and

---

[6] *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978) (an affidavit in support of a warrant may not include deliberately or recklessly false statements).

"Jordan jumped into the fight to help Paul"; and (3) the witness "heard gunshots and saw muzzle flashes coming from inside the car where Anthony was at." Doc. 17-3 at 3. Thus, Defendant Juarez informed Judge Nash that Plaintiff was not the first aggressor and that Defendant shot two men during a fight involving multiple individuals. Plaintiff's assertion that, in addition to reciting this information, Defendant Juarez had to attach the surveillance videos, is not "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## IV. The Court Declines Supplemental Jurisdiction Over Plaintiff's State-Law Claim.

Defendant City of Albuquerque moves the Court for summary judgment on the claim against it under state law for negligent training and supervision. The Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367 because it and the federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Nonetheless, the Court may decline supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Tenth Circuit has indicated that "[w]hen all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis added). Deferral of state law issues is particularly appropriate in this case because the question of when the 90 day notice period under the New Mexico Tort Claims Act began to accrue is not obvious. Accordingly, the Court declines supplemental jurisdiction over the NMTCA claim and dismisses it without prejudice.

## CONCLUSION

Summary judgment in favor of Defendants Terra Juarez and the City of Albuquerque is GRANTED on Counts I and II of the First Amended Complaint.

Count III of the First Amended Complaint is DISMISSED without prejudice.

A order of judgment under Rule 58 will enter as a separate document.

SO ORDERED.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent