# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ANTHONY KAPINSKI,

      Plaintiff,

      v.                                                                                                  Civ. No. 18-716 SCY/GJF

CITY OF ALBUQUERQUE and
TERRA JUAREZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR RECONSIDERATION

Plaintiff Anthony Kapinski moves for reconsideration of the Court's June 24, 2019 Memorandum Opinion and Order granting Defendants' motion for summary judgment on Plaintiff's federal claims and declining jurisdiction over Plaintiff's state-law claim. Doc. 29. Plaintiff argues that the Court failed to draw all reasonable inferences from the videos at issue in his favor. Because Plaintiff misapprehends how the Tenth Circuit has directed district courts to consider the record in determining arguable probable cause and because Plaintiff does not at all address the second prong of the qualified immunity analysis, he does not demonstrate good grounds for reconsideration. The Court therefore DENIES his motion.

**I.    Background**

Defendant police officer Terra Juarez swore out an arrest warrant for Plaintiff for double homicide after Plaintiff shot and killed two people during an altercation in a church parking lot. The altercation was recorded by two surveillance cameras, but Defendant Juarez did not describe the video footage in her affidavit or present the videos to the judge who signed the warrant for Plaintiff's arrest. A jury later acquitted Plaintiff on the charges of homicide. Plaintiff sued,

bringing causes of action under § 1983 against Defendants City of Albuquerque and Terra Juarez for False Arrest and Imprisonment and Malicious Prosecution. Doc. 5 ¶¶ 36-45. Plaintiff also brought a claim against the City of Albuquerque under the New Mexico Tort Claims Act. *Id.* ¶¶ 46-52. Defendants moved for summary judgment on all claims, raising the defense of qualified immunity. Doc. 17.

The Court granted Defendants' motion for summary judgment on Plaintiff's § 1983 claims. Doc. 27. In doing so, the Court found Defendant Juarez did not violate Plaintiff's constitutional rights because, even considering the surveillance videos not referenced in the affidavit or shown to the judge who signed the warrant, arguable probable cause existed to charge and arrest Plaintiff. *Id.* at 15-17. The Court further found that, even assuming a constitutional violation, the law at the time did not clearly establish a duty to present evidence of self-defense in an arrest warrant affidavit. *Id.* at 18-23. In fact, the only cases addressing the issue have held the opposite: Law enforcement officers in New Mexico have no duty to present evidence of self-defense at preliminary criminal proceedings. *Id.* at 19-23.

Plaintiff's motion for reconsideration focuses on a single paragraph of the Court's analysis. Doc. 29 at 2. In finding that Defendant Juarez' affidavit contained probable cause, the Court remarked that the surveillance videos "neither show nor definitively rule out whether, while fighting Aiden (Plaintiff's companion), Jordan [the second person Plaintiff shot] shoved the car door into Plaintiff." Doc. 27 at 16. The Court concluded that, given the low quantum of evidence required for a finding of probable cause, "the videos provide probable cause to justify the arrest of Plaintiff for the murder of Jordan." *Id.* at 17. On reconsideration, Plaintiff argues that "[b]ecause Plaintiff's interpretation of these facts as reflecting Jordan 'slamming the door' is not 'blatantly contradicted' by the video evidence, the Court must construe the video as

indicating Jordan slammed the door on Plaintiff." Doc. 29 at 4.

## II. Legal Standard

Plaintiff styles his motion as a "Motion to Reconsider" but does not specify the rule pursuant to which the motion is brought. Doc. 29 at 1. Motions for reconsideration are not expressly provided for in the Federal Rules of Civil Procedure. *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). These motions may be construed in one of two ways: if filed within the time prescribed under Rule 59(e), it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed outside of Rule 59(e)'s time limit, it is treated as a motion for relief from judgment under Rule 60(b). *Id.*[1] "The standard of review for either is an abuse of discretion." *Id.*

As Plaintiff filed this motion on the evening of July 22, the 28th day after the entry of final judgment, the Court construes his motion as a Rule 59(e) motion. "Grounds warranting a [Rule 59] motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

---

[1] In 2009, Rule 59(e) was amended to change the relevant period from 10 days to 28 days. *See* Fed. R. Civ. P. 59, Committee Notes on Rules—2009 Amendment.

## III. Discussion

### A. Local Rule 7.1(a)

In Defendants' response to the present motion, they contend that Plaintiff failed to follow Local Rule 7.1(a) in filing the motion to reconsider. Doc. 30 at 4. Local Rule 7.1(a) requires the movant to determine whether a motion is opposed prior to filing and further provides that "a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ. 7.1(a). While the Court acknowledges that some motions, by their very nature, will be opposed, there are no exceptions to Local Rule 7.1(a). Thus, even when an attorney expects that a motion will be unopposed, that attorney should seek opposing counsel's position prior to filing the motion. Plaintiff's motion lacks the required Rule 7.1(a) statement, and this constitutes independent grounds to deny the motion. The Court, however, chooses to reach the merits of Plaintiff's current motion to reconsider rather than having its fate turn on this rule violation.

### B. Plaintiff Did Not Waive His Argument.

Defendants argue that Plaintiff waived his present argument for reconsideration because he did not dispute Defendants' proposed Fact No. 13; namely, that Plaintiff "sat down onto his driver's side seat." Doc. 30 at 4 (citing Doc. 17 at 5). Because Defendants misapprehend Plaintiff's position, the Court rejects their argument. Defendants' Fact No. 13 was simply a quote from Defendant Juarez' summary of the surveillance footage. In other words, Plaintiff did not dispute that Defendant Juarez' police report stated that Plaintiff sat down onto his driver's side seat. Agreeing that Defendant Juarez wrote what she wrote is not the same as agreeing that what she wrote is accurate. And, Plaintiff proposed his own Fact No. R which stated: "The surveillance video shows that despite having seen Plaintiff shoot Francia, Mucher continued to hold Plaintiff's companion under his arm in a choke hold, approached Plaintiff aggressively, and

pushed the car door forcefully into Plaintiff's body, knocking him back down into the car." Doc. 21 at 4. Further, as Plaintiff points out in his Reply, while a person typically voluntarily sits down, it is possible that a person could be physically forced to sit down. Doc. 31 at 6. Thus, the Court finds that Plaintiff adequately placed this dispute before the Court for purposes of Defendants' summary judgment motion—which is why the Court discussed Plaintiff's contention in its Memorandum Opinion. Doc. 27 at 16.

  C. <u>Plaintiff's Interpretation Of The Surveillance Footage Does Not Determine Whether Arguable Probable Cause Existed To Arrest Plaintiff For Homicide.</u>

On reconsideration, Plaintiff argues that, as the non-movant, his "interpretation of the evidence may only be ignored if it is 'blatantly contradicted by the record.'" Doc. 29 at 4. In support, Plaintiff cites two excessive force cases where the Supreme Court and the Tenth Circuit, respectively, chose not to defer to a plaintiff's version of the facts when video evidence existed that blatantly contradicted that version. Doc. 31 at 3 (citing *Scott v. Harris*, 550 U.S. 372 (2007) and *Carbajal v. City of Cheyenne, Wyom.*, 847 F.3d 1203, 1207 (10th Cir.) (2017)). Thus, Plaintiff's argument that courts should consider whether video evidence "blatantly contradicts" a non-movant's version of the facts has merit when considering summary judgment *in excessive force cases. See Scott v. Harris*, 550 U.S. at 378 ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

The outcome of excessive force cases, however, turns on what *actually* happened. In *Scott*, the Supreme Court concluded that the video evidence "quite clearly contradict[ed] the version of the story told by [plaintiff] and adopted by the Court of Appeals." *Id*. at 378. "Far from being the cautious and controlled driver the lower court depicts, what we see on the video

5

more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." *Id*. at 380. This video, then, demonstrated that the police officer's use of force was reasonable. *Id*. at 383-84. Similarly, in *Carbajal*, the Tenth Circuit relied on video evidence to reject a non-moving plaintiff's version of the facts and conclude that police officers did not act excessively when they shot plaintiff or when they then pulled him out of his vehicle. 847 F.3d at 1210-11.

Plaintiff argues that, unlike these cases, the videos here do not blatantly contradict his version of the events. Like these cases, however, Plaintiff argues that whether his case survives Defendants' summary judgment motion turns on what a reasonable jury who watches the videos could conclude actually happened. The Court acknowledges that the central question in an excessive force case is similar to the central question in a self-defense case. Asking whether a reasonable police officer justifiably could use a certain level of force to affect a detention under circumstances captured on video is similar to asking whether a reasonable person justifiably could use a certain level of force in self-defense under circumstances captured on video. This latter question of whether Plaintiff acted in self-defense, of course, is the one a jury considered during Plaintiff's criminal trial.

But this question is different than the one presently before the Court. The present question is not whether Plaintiff *actually* acted in self-defense. Instead, "[i]n the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (some internal quotation marks omitted). In determining whether a reasonable officer could conclude from the videos whether arguable probable cause existed to support Plaintiff's arrest (the inquiry

6

*Stonecipher* mandates), the Court rejects Plaintiff's invitation to ask whether a reasonable jury could agree with his interpretation of the videos and conclude that he acted in self-defense. Instead, the Court asks what the Tenth Circuit in *Stonecipher* dictates it must: whether a reasonable police officer viewing the videos arguably could find probable cause to support a homicide charge against Plaintiff.

The answer to this question does not turn on whether a reasonable jury could conclude Jordan Mucher actually attacked Plaintiff. A jury's reasonable conclusion that the videos show Jordan attacked Plaintiff and an officer's reasonable conclusion that the videos establish probable cause to charge Plaintiff with Jordan's are not mutually exclusive. Whether a police officer correctly determined the existence of probable cause must be decided in light of the low threshold for probable cause. "Probable cause is not a precise quantum of evidence—it does not, for example, require the suspect's guilt to be more likely true than false. Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotations omitted). And, for purposes of qualified immunity, even officers who mistakenly determine that this low probable cause threshold was met are immune from suit as long as the existence of probable cause was "arguable." *Id.* ("Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists.").

Plaintiff's construction would alter the Tenth Circuit's mandate in *Stonecipher* that a "defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.* (internal quotation marks omitted). Under Plaintiff's construction, rather than asking whether an objectively reasonable officer could

arguably conclude that probable cause existed, a court would have to ask whether a jury could determine that an objectively reasonable officer *who is forced to adopt Plaintiff's interpretation of the evidence* could conclude that probable cause existed. This construction would strip the protections of qualified immunity from any police officer who found probable cause to support an arrest that did not ultimately result in a conviction. Because very rarely does video evidence exist to "blatantly contradict" a plaintiff's version of the facts, almost all police officers sued after an unsuccessful prosecution would be subject to a jury trial. While disagreement might exist as to whether this is a desirable social outcome, it is not an outcome that the doctrine of qualified immunity countenances.

To illustrate the implications of the construction Plaintiff proposes, suppose 95% of reasonable police officers who watched the videos concluded that they did not show Jordan attacking Plaintiff, while 5% of reasonable police officers who watched the videos disagreed and concluded that the videos showed Jordan attacking Plaintiff. Given that 95% of reasonable officers who watched the videos would conclude that probable cause existed, an officer who sought the warrant would certainly meet *Stonecipher*'s "arguable probable cause" standard.[2] But, in determining whether arguable probable cause existed, Plaintiff would have the court ignore the honest interpretation of 95% of reasonable officers and adopt the honest interpretation of the small minority.

This proposed construction would eviscerate the protections of qualified immunity. Under this construction, before seeking an arrest warrant, a police officer would have to set aside his/her honest interpretation of evidence and ask what the most favorable interpretation of the

---

[2] Of course, as set forth below and in the Court's June 24, 2019 Order, it is not clearly established in New Mexico that police officers must present evidence of self-defense during preliminary criminal proceedings.

evidence might be from the suspect's perspective. If that interpretation would vitiate probable cause, even if the vast majority of officers, judges, and juries would reject that interpretation, the police officer who sought the arrest warrant would face personal liability at a jury trial if the charges against the suspect were dismissed for any reason, or if the suspect were ultimately acquitted. In other words, the officer whose "conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists" would not enjoy the protection of qualified immunity. *See Stonecipher*, 759 F.3d at 1141. Such a result is inconsistent with Supreme Court and Tenth Circuit precedent. *Cf. id*. at 1141-42; *Puller v. Baca*, 781 F.3d 1190, 1197-98 (10th Cir. 2015).

Of course, sometimes there are questions of fact a jury must consider when a Plaintiff has sued an officer for bringing a charge not supported by probable cause. For instance, as the Court noted in its June 24 Order (Doc. 27 at 12-13), the jury in *Harte v. Board of Commissioners of Johnson, Kansas*, was tasked with determining whether police officers lied when they swore in a search warrant affidavit that tea leaves found in the plaintiffs' trash field tested positive for marijuana. 864 F.3d 1154, 1174 (10th Cir. 2017). If the officers did lie, they would be liable to Plaintiff as a matter of law because every reasonable officer is on notice that a constitutional violation would arise from deliberately and falsely swearing in a search warrant affidavit that leaves tested positive for marijuana when, in fact, they did not. *Id*. at 1162.

Similarly, in the present case, if no reasonable officer watching the videos could believe there was probable cause to arrest Plaintiff, Plaintiff would survive summary judgment (and prevail on his own motion for summary judgment). Plaintiff would also survive summary judgment if there were some other genuine issue of material fact, such as a legitimate question over whether the police doctored the videos in a manner unfavorable to Plaintiff. But the

question of whether arguable probable cause existed to support an arrest warrant is generally a question for the court, not the jury. *See Puller v. Baca*, 781 F.3d 1190 (10th Cir. 2015) (concluding at the pre-trial qualified immunity stage that, after taking out false information and adding in material omitted information in the affidavit at issue, probable cause still existed to support an arrest warrant and so summary judgment in favor of the defendant was appropriate); *see also White v. Pauly*, 137 S. Ct. 548, 551 (2017) (district courts have a duty to permit cases to go to trial only when the right at issue has already been clearly established at a high degree of specificity); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation: because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability.'" (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985))).

Thus, a case where the Court must consider whether an officer who found probable cause to support an arrest is entitled to qualified immunity is different than other types of cases in which Plaintiff's proposed construction would be appropriate. For instance, had Plaintiff brought a battery claim against Jordan's estate, the critical inquiry at the summary judgment stage would be whether a reasonable jury could conclude that Jordan actually attacked Plaintiff. In such a case, if a reasonable jury could conclude that the videos showed Jordan attacking Plaintiff by slamming the car door into him, Plaintiff would survive summary judgment—even if other reasonable interpretations of the videos also existed. That is because Jordan never enjoyed the protections of qualified immunity and because the question in the battery case would be whether Jordan attacked Plaintiff, not whether a reasonable officer viewing the videos could arguably determine probable cause existed to support Plaintiff's arrest.

In other words, in this case, the existence of arguable probable cause does not depend on

whether Jordan *actually* attacked Plaintiff or whether a jury could find, after viewing the video, that Jordan in fact did so. Although, drawing all reasonable inferences in favor of Plaintiff, it is perhaps possible that Jordan really was attacking Plaintiff, the Court does not agree with Plaintiff that the otherwise equivocal video evidence vitiated probable cause.[3] A finding to the contrary would turn the doctrines of probable cause and qualified immunity on their head to require an objectively reasonable police officer to view the evidence in the light most favorable to the suspect. That is not the correct analysis. Here, as the Court found in its June 24 Order, a reasonable police officer could conclude, after viewing the surveillance videos, that probable cause existed to support Plaintiff's arrest for homicide. Plaintiff has offered insufficient grounds to reconsider that determination.

      D.      <u>Plaintiff's Motion Fails To Address Independently Sufficient Grounds For Granting Qualified Immunity.</u>

Even if Plaintiff could get past the first prong of qualified immunity by establishing a constitutional violation, he would still lose on the second prong. Plaintiff's motion for reconsideration and his reply utterly fail to address the second prong of the qualified immunity analysis. He does not in any way acknowledge or discuss the Court's conclusion that the law is not clearly established with respect to whether—let alone how much—evidence of self-defense must be included in an affidavit. It is Plaintiff's burden to defeat qualified immunity on *both*

---

[3] Plaintiff repeatedly stresses in his Reply that in determining whether Jordan slammed the car door on Plaintiff, the Court should focus on the rooftop video (Plaintiff's video D) rather than on the door video (Plaintiff's video E). Doc. 31. at 1-2, 4-6. Before entering its June 24, 2019 Order, the Court reviewed *both* videos (in regular speed, slow speed, and frame by frame) dozens of times. The Court has again done so in advance of entering the present Order. Whether any reasonable police officer could conclude from the rooftop video that Jordan slammed the car door on Plaintiff is something the Court considers a close call. This is not the Court's interpretation of the video. Nonetheless, the Court concludes that it is *possible* that a reasonable police officer could interpret the video the same way as Plaintiff. But a reasonable police officer would not be *compelled* to do so.

whether a constitutional right was violated *and* whether that right is clearly established. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) ("When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the alleged violation occurred."). Even if it were clear that Jordan attacked Plaintiff, Plaintiff fails to demonstrate that clearly established law required Defendant Juarez to say so in her affidavit. Plaintiff's motion for reconsideration is therefore also denied for failure to demonstrate that the right he says Defendant Juarez violated was clearly established.

    IT IS SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent